IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: <br><br> JOELLE WALKER, <br><br>                         Debtor(s). <br><br> RICHARD P. MULDOON <br><br>                         Plaintiff(s) <br><br> vs. <br><br> JOELLE WALKER <br><br>                         Defendants(s). | CASE NO. BK19-40814-TLS <br><br> CHAPTER 7 <br><br> ADV. NO. A19-4028-TLS <br><br><br> ORDER |

      This matter is before the court on the cross-motions for summary judgment filed by the debtor-defendant (Fil. No. 84) and the plaintiff (Fil No. 85). Stacy C. Bach represents the debtor, Joelle Walker, and William J. Troshynski, Jr., represents the plaintiff, Richard P. Muldoon. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motions were taken under advisement without oral arguments.

      The motions are denied.

      This adversary proceeding arises from the pre-petition payment of money by Mr. Muldoon to Ms. Walker. Ms. Walker has two children with Mr. Muldoon's son Ryan, who was ordered in 2010 to pay child support to Ms. Walker. By November 2015, Ryan had fallen behind on those payments and the State of Nebraska subsequently moved for an order to show cause why he should not be held in contempt. In November 2018, Ryan filed a complaint to modify the child support order, alleging that at Ms. Walker's request his father had been making regular payments, totaling $19,800, directly to Ms. Walker for child support on Ryan's behalf and that amount should be credited to the amount Ryan owed. Ms. Walker denied these allegations in her answer to Ryan's complaint. The matter was set for trial in October 2019.

      When Ryan filed his complaint to modify the child support order, Mr. Muldoon filed a complaint in the County Court of Kimball County against Ms. Walker[1] alleging that:

- Ms. Walker asked him to make payments to her for Ryan's child support obligation;
- Beginning in January 2016, Mr. Muldoon made 33 such payments totaling $19,800;
- Ms. Walker refused to acknowledge that these funds had been paid for child support and continued to claim an outstanding balance due; and

---

[1] Ms. Walker was known as Joelle Lynn Fiehtner at that time, but for the sake of clarity she will be referred to as Ms. Walker throughout this order.

- Ms. Walker obtained these payments by means of fraud and/or false statements.

Mr. Muldoon's prayer for relief requested an order finding that Ms. Walker "breached her agreement and/or induced [Mr. Muldoon] to make payments based upon fraud and false statements and enter an award in the amount of $19,800.00[.]" Compl. in CI18-126 (Fil. No. 30).

Ms. Walker did not file an answer, so Mr. Muldoon moved for default judgment on February 27, 2019. In the affidavit in support of the motion, Mr. Muldoon stated that Ms. Walker had breached her agreement regarding applying the payments to Ryan's child support obligations; fraud or false statements were not explicitly mentioned.

The county court entered an order of default judgment on February 28, 2019, which stated in its entirety:

> This cause came before the Court on 2/28/2019 on the pleadings and evidence. The Court, being duly advised in the premises, FINDS: that the Debtor(s), Joelle L Fiehtner
>
> is/are in default and the default is taken and entered; that there is due from the Debtor(s):
> a judgment of     $19,800.00
> court costs of        $64.50
>
> Plus increased costs.
>
> IT IS SO ORDERED.

Order of Default J. (Fil. No. 32).

A week later, Ms. Walker filed a complaint to vacate the default judgment, stating that she did receive approximately $19,800 from Mr. Muldoon in 2016 and 2017 to help pay for the children's expenses. She identified these funds as gifts and said there was never an agreement that she would repay the money or that the money would be applied to Ryan's child support obligation. The county court held a hearing on Ms. Walker's motion and denied it.

Ms. Walker subsequently filed her Chapter 7 petition for bankruptcy relief on May 13, 2019. Mr. Muldoon received notice of the bankruptcy case. However, he thereafter sent letters to the county court and to the Nebraska Child Support Payment Center seeking assistance in an effort to have the judgment amount applied as a credit to the amount of child support due (approximately $17,000), which evidently would have paid Ryan's obligations in full, with Mr. Muldoon expressing a willingness to forgive the balance of the judgment owed by Ms. Walker.

Ms. Walker complained to the county court about this violation of the automatic stay, and the county court held a hearing at which there was no appearance on behalf of Mr. Muldoon. The court stated that no action would be taken on Mr. Muldoon's requests until the bankruptcy stay

was lifted, and at Ms. Walker's request specifically found that "the letters that were submitted to the Court and filed with the Court on July 9th and August 9th from Mr. Muldoon do violate the bankruptcy stay." Tr. of Hr'g on Aug. 14, 2019, 6:6-9 (Fil. 42).

In the meantime, Mr. Muldoon filed this adversary proceeding alleging the debt should be excepted from discharge under 11 U.S.C. § 523(a)(2). Ms. Walker answered and filed a counterclaim alleging Mr. Muldoon willfully violated the automatic stay by attempting to enforce the judgment against the debtor. Both parties have now moved for summary judgment.

Ms. Walker's motion alleges there was no evidence presented to the county court that the payments from Mr. Muldoon were received as a result of fraud or false representation and she asks for entry of an order affirming her counterclaim regarding the stay breach and imposing sanctions. In resisting the motion, Mr. Muldoon argues that Ms. Walker has not shown either that the stay violation was willful or that she was injured by it.

Mr. Muldoon's motion argues that collateral estoppel gives the county court judgment preclusive effect. In opposing the motion, Ms. Walker asserts that the county court judgment does not establish the elements of § 523(a)(2)(A) because there is no underlying evidence that Ms. Walker intended to deceive Mr. Muldoon from the outset.

As to the collateral effect of the county court judgment, a state court action to establish a debt is separate from a determination of the dischargeability of that debt in bankruptcy. *Tatge v. Tatge (In re Tatge)*, 212 B.R. 604, 609 (B.A.P. 8th Cir. 1997) (citing *Brown v. Felsen*, 442 U.S. 127, 134-35 (1979)). The bankruptcy court has exclusive jurisdiction to determine whether debts for a debtor's fiduciary or non-fiduciary fraud, embezzlement, larceny, or willful and malicious injury are non-dischargeable. 11 U.S.C. § 523(c); *Zio Johnos, Inc. v. Ziadeh (In re Ziadeh)*, 276 B.R. 614, 619 (Bankr. N.D. Iowa 2002). Therefore, the court must review the state court judgment to see whether it establishes the elements of a prima facie case under § 523. *Hobson Mould Works, Inc. v. Madsen (In re Madsen)*, 195 F.3d 988, 989-90 (8th Cir. 1999) (per curiam).

The court "employs a flexible and pragmatic approach when assessing the preclusive effect of [another] court's order." *First State Bank of Roscoe v. Stabler*, 914 F.3d 1129, 1136-37 (8th Cir. 2019). When the parties have previously litigated an issue in a state court, the bankruptcy court will look to state law to determine the preclusive effect of that judgment. *Id.* at 1137; *Madsen*, 195 F.3d at 989-90; *Jacobus v. Binns (In re Binns)*, 328 B.R. 126, 129 (B.A.P. 8th Cir. 2005). This court does "not make preclusion determinations in the abstract or in a vacuum." *Stabler*, 914 F.3d at 1137. Instead, it must "look to see what the underlying court actually said and what the parties communicated to one another and to the court about what they understood to be at issue in the underlying proceeding." *Id.*

In Nebraska, the doctrine of collateral estoppel, also known as issue preclusion, holds that an issue of ultimate fact that was determined by a valid and final judgment cannot be litigated again between the same parties or their privies in any future lawsuit. *Stevenson v. Wright*, 733 N.W.2d 559, 565-66 (Neb. 2007). Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action,

and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Hara v. Reichert*, 843 N.W.2d 812, 816 (Neb. 2014).

In this case, it is clear that the same parties are involved and they had the opportunity to fully and fairly litigate the issue in county court. Ms. Walker opted not to litigate it and let a judgment of default be entered in Mr. Muldoon's favor. A default judgment is considered to be a judgment on the merits for preclusive purposes. *Young v. Govier & Milone, L.P.*, 835 N.W.2d 684, 696 (Neb. 2013) (citing *DeVaux v. DeVaux*, 514 N.W.2d 640, 646 (Neb. 1994), *superseded by statute on other grounds as stated in Alisha C. v. Jeremy C.*, 808 N.W.2d 875, 882 (Neb. 2012)).

Thus, the question remaining is whether the county court judgment decided the issue of fraud. Ms. Walker argues that it did not, because the affidavit in support of the motion for default judgment specifically states Ms. Walker "breached her agreement" regarding the payments and does not mention fraud at all. Fil. No. 31 at 4.

While the affidavit may not have mentioned fraud specifically, it does state that the allegations in the complaint were true. The complaint specifically alleged that Ms. Walker obtained the payments by means of fraud and/or false statements. The order of default judgment states that it is based on the pleadings and the evidence. Therefore, the issue of fraud was included in the final judgment in the county court case.

With that being said, it is the province of the bankruptcy court to determine whether the county court judgment establishes the elements of § 523(a)(2)(A), which prohibits the discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]"

To exclude such a debt from discharge, the creditor must show:

> that a debtor (1) made a representation, (2) with knowledge of its falsity, (3) deliberately for the purpose of deceiving the creditor, (4) who justifiably relied on the representation, and which (5) proximately caused the creditor damage. *Heide v. Juve (In re Juve)*, 761 F.3d 847, 851 (8th Cir. 2014). Exceptions to discharge are to be construed narrowly. *Reshetar Sys., Inc. v. Thompson (In re Thompson)*, 686 F.3d 940, 944 (8th Cir. 2012).

*Hernandez v. General Mills Fed. Credit Union (In re Hernandez)*, 860 F.3d 591, 601-02 (8th Cir. 2017).

The county court judgment does not establish all of these elements. It particularly does not establish what representations Ms. Walker made and whether she deliberately made them for the purpose of deceiving Mr. Muldoon. To amount to fraud, a statement must be made deliberately and intentionally with the intention and purpose of deceiving. *Lindau v. Nelson (In re Nelson)*, 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006). "The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." *Merchants Nat'l Bank v. Moen (In*

*re Moen)*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) (quoting *Moodie-Yannotti v. Swan (In re Swan)*, 156 B.R. 618, 623 n.6 (Bankr. D. Minn. 1993)). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *Id.* (quoting *Van Horne*, 823 F.2d at 1287). The intent to deceive will be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act. *Id.* (quoting *Duggan*, 169 B.R. at 324). The key is whether the debtor knew the statement to be false at the time she made it. "Even if a false statement is made, no fraud exists unless the maker knows the statement is false at the time the statement is made." *Nelson*, 357 B.R. at 513.

Accordingly, the debt cannot be excepted from discharge until this court has evidence of what representations Ms. Walker made to Mr. Muldoon and what her intent was in making those representations. Mr. Muldoon's motion for summary judgment must be denied.

Ms. Walker's request for summary judgment on her stay violation counterclaim must also be denied. She alleges that Mr. Muldoon willfully violated the automatic stay by attempting to enforce a pre-petition judgment against the debtor and by attempting to set off a prepetition debt. As noted above, the county court did find that Mr. Muldoon's correspondence violated the automatic stay. Stay violations are addressed in 11 U.S.C. § 362(k)(1), which provides that a debtor injured by a willful violation of the automatic stay shall recover actual damages, including costs and attorneys' fees. To recover under § 362(k), the debtor must show that the creditor's violation of the automatic stay was willful and that the violation injured the debtor. *Garden v. Cent. Nebraska Hous. Corp.*, 719 F.3d 899, 906 (8th Cir. 2013). "A willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition." *Knaus v. Concordia Lumber Co. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir. 1989).

> A willful violation does not require a finding of specific intent. *Associated Credit Servs. v. Campion* (*In re Campion* ), 294 B.R. 313, 316 (9th Cir. BAP 2003). "[A]n act is deemed to be a willful violation if the violator knew of the automatic stay and intentionally committed the act regardless of whether the violator specifically intended to violate the stay." *Preston v. GMPQ, LLC (In re Preston),* 395 B.R. 658, 663 (Bankr. W.D. Mo. 2008) (citing *Jove Eng'g, Inc. v. IRS,* 92 F.3d 1539, 1555 (11th Cir. 1996)).

*Carter v. First Nat'l Bank of Crossett (In re Carter)*, 502 B.R. 333, 336 (B.A.P. 8th Cir. 2013), *aff'd,* 583 F. App'x 560 (8th Cir. 2014).

The evidence in the record indicates that Mr. Muldoon knew of the existence of the automatic stay but contacted the county court for assistance anyway, under the misguided belief that he would be helping Ms. Walker's situation. This falls within the definition of a willful violation of the automatic stay.

However, an award of damages does not automatically follow. Courts are unwilling to impose sanctions if the violation is merely technical. *Carter*, 502 B.R. at 337. Moreover, absent evidence to support an award of actual damages, an award of attorneys' fees for prosecuting the stay violation is inappropriate, *Lovett v. Honeywell, Inc.*, 930 F.2d 625, 629 (8th Cir. 1991), although the recovery of attorneys' fees actually incurred to protect the debtor or property of the

estate from a creditor's stay violation is not barred. *Garden*, 719 F.3d at 906-07. *See also In re West*, No. 12-03377-LMJ13, 2014 WL 1419805, at *5 (Bankr. S.D. Iowa Apr. 11, 2014). There is no evidence before the court of the cost, if any, to protect Ms. Walker from Mr. Muldoon's violations of the automatic stay. Accordingly, Ms. Walker is not entitled to summary judgment on her counterclaim.

IT IS ORDERED: The debtor-defendant's motion for summary judgment (Fil. No. 84) is denied. The plaintiff's motion for summary judgment (Fil. No. 85) is denied. Trial will commence as scheduled at 1:00 pm CDT on Thursday, July 9, 2020.

DATED: May 18, 2020.

> BY THE COURT:
>
> /s/Thomas L. Saladino
> Chief Judge

Notice given by the Court to:
    *Stacy C. Bach
    *William J. Troshynski, Jr.
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.